IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

——————————————————————

KAREN P.,

                          Plaintiff,

        v.                                        Civil Action No.
                                                  8:20-CV-0841 (DNH/DEP)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

                          Defendant.

——————————————————————

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF

SCHNEIDER & PALCSIK              MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, NY 12901

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          JAMES J. NAGELBERG, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

———————————————

[1]      Plaintiff's complaint named Andrew M. Saul, in his official capacity as the
Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi
took office as the Acting Social Security Commissioner. She has therefore been
substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure, and no further action is required in order to effectuate
this change. *See* 42 U.S.C. § 405(g).

<u>REPORT AND RECOMMENDATION</u>

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, ineligible for the supplemental security income ("SSI") benefits for which she has applied.  The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    <u>BACKGROUND</u>

Plaintiff was born in April of 1965, and is currently fifty-six years of age.  She was fifty-two years old at the time of her application for benefits in January of 2018.  Plaintiff stands five-foot and six inches in height, and weighs approximately two hundred and seventeen pounds.  Plaintiff resides in an apartment with her husband and stepson in Champlain, New York.

Plaintiff has a high school education and has achieved an associate's degree in financial services.  She is able to read, write, do simple math,

and handle money.  Plaintiff reports that she stopped working in December 2007.  Prior to that time, she worked as both a cashier and a cashier supervisor in a supermarket.

Physically, plaintiff alleges that she suffers from tendonitis in her wrists, chronic lower back pain, arthritis in both knees, and migraines. Plaintiff uses a brace on her left wrist and a brace for her right knee.  She had a left first extensor compartment release surgery in April of 2018.  She has also undergone multiple steroid injections for her back and knee, osteopathic manipulation, and physical therapy, which she has reported as providing good relief from her pain.  During the relevant period, plaintiff treated for her physical impairments with the University of Vermont Health Network and Champlain Family Health.

Mentally, plaintiff alleges that she suffers from depression and anxiety.  Plaintiff has received treatment in the form of therapy and medication.  Plaintiff has treated for her mental impairments during the relevant period with Clinton County Mental Health and North Country Behavioral Medicine.

Plaintiff has been prescribed several medications over time including, though not limited to, Advil, Cymbalta, Paxil, Imitrex, Prazosin, Levothyroxine, and Trazadone.

Plaintiff has reported that she is able to cook basic meals, fold laundry, shop, watch television, and dress herself but needs help with things like shoes and bras.  She cannot write or type with her left hand, do dishes, hold things, carry things, do laundry, or vacuum.  She enjoys doing crafts such as plastic canvas embroidery, which she can do a few times per week for 30 to 45 minutes at one time.  She also helps teach at a Sunday school program approximately twice per month for an hour.  Plaintiff takes care of her grandchild for two months during the summer, which includes baking cookies with him, doing jigsaw puzzles with him, and listening to him read.  She has reported having difficulty climbing stairs due to her knee, but walks approximately a mile three times per week.  According to plaintiff, she is emotional and has days where she cannot get out of bed because of depression.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social Security Act on January 3, 2018.  In support of that application, she claimed to be disabled due to depression, anxiety, migraines, arthritis, lower back pain and spondylosis, numbness in her right foot, thyroid issues, insomnia, vitamin D deficiency, epilepsy, and tendinitis in both

wrists.

A video hearing was conducted on July 19, 2019, by ALJ Brian LeCours, to address plaintiff's application.  Following that hearing, ALJ LeCours issued an unfavorable decision on August 19, 2019.  That opinion became a final determination of the agency on July 15, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ LeCours applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff had not engaged in substantial gainful activity during the relevant period.  The ALJ next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including lumbar and thoracic degenerative disc disease, DeQuervain's tenosynovitis status-post left first extensor release surgery, migraine headaches, right radial neuropathy, and right knee degenerative joint disease/arthritis.  As part of his step two finding, ALJ LeCours found that plaintiff's seizures and mental impairments are not severe.

At step three, ALJ LeCours examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of the listed,

presumptively disabling conditions set forth in the Commissioner's

regulations, although he did not discuss any specific listings.

ALJ LeCours next surveyed the available record evidence and

concluded that plaintiff retains the residual functional capacity ("RFC") to

perform a range of light work,[2] as defined by the controlling regulations,

with the following exceptions:

> she can frequently stoop, kneel, crouch, crawl and climb ramps and stairs, but can never climb ladders, ropes or scaffolds, and must avoid exposure to extremely loud work environments, further defined as above Noise Intensity Level 4, and the claimant should avoid exposure to hazardous conditions such as unprotected heights and dangerous machinery.

---

[2]    By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

ALJ LeCours went on to step four to conclude that plaintiff is able to perform the demands of her past relevant work as a cashier checker, based on his RFC determination.  Proceeding to step five, the ALJ found, in the alternative, that the additional postural and environmental limitations set forth in the RFC do not preclude plaintiff from performing other work in the national economy, citing, as in representative jobs, an office helper, a router, and a photocopying machine operator.  Based upon these findings, ALJ LeCours concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on July 27, 2020.[3]  In support of her challenge to the ALJ's determination, plaintiff raises several arguments, contending that (1) the ALJ erred in failing to afford great weight to the opinions from the treating and examining sources such as Physician's Assistant ("PA") Julie Steele-Goodwin, consultative examiner Dr. Nader Wassef, and consultative examiner Dr. Brett Hartman, failing to specify the weight he afforded to opinions from therapist Amy Weir or PA Jennifer Kenaly, and failing to recontact any source to clarify ambiguities in any of

---

[3]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

their opinions; (2) the ALJ erred in determining that plaintiff should not be

found to be disabled under the Medical Vocational Guidelines ("Grids")

Rules 201.12 and 201.14 by failing to find that plaintiff was limited to

sedentary work; (3) the ALJ erred in finding that plaintiff had the ability to

perform light work because he failed to appropriately consider her pain, her

obesity, and the limitations imposed by her hand and wrist impairments; (4)

the ALJ failed to properly consider her mental functioning in combination

with her other impairments and failed to find her mental impairments severe

at step two; and (5) the ALJ misinterpreted the evidence and erred in failing

to credit her reports of pain and mental symptoms despite the record

evidence that substantiates those reports.  Plaintiff also argues that the

court should consider the record in its entirety and examine the evidence

from both sides when reviewing the ALJ's decision and should not apply a

"very deferential" standard of review, as argued for by the Commissioner.

Oral argument was conducted in this matter, by telephone, on

November 17, 2021, at which time decision was reserved.

III.    DISCUSSION

    A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must

9

be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, at step five the agency

must examine whether the claimant can do any other work.  *Id.* §§

404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

1.   Clarification of the Standard of Review

In her reply brief, plaintiff takes issue with the Second Circuit Court of

Appeals' pronouncements in *Brault* regarding the applicable standard of

review to be applied when deciding social security appeals.  Plaintiff's

argument that *Brault* does not represent the proper standard of review in

this case is simply incorrect.  Recent case law reflects that the "substantial

evidence" test outlined in *Brault* continues to represent the prevailing law of

the Second Circuit for social security cases.  *See, e.g., Talyosef v. Saul*,

848 F. App'x 47, 48 (2d Cir. 2021) (citing *Brault* for proposition that

substantial evidence "means that 'once an ALJ finds facts, we can reject

those facts only if a reasonable factfinder would have to conclude

otherwise'" when discussing the standard of review); *accord Harrington v.*

*Saul*, 827 F. App'x 146, 147 (2d Cir. 2020).  To the extent that plaintiff

intends to raise a legal challenge to the standard outlined in *Brault*, I

decline to recommend that the court accept that challenge, given that this

court is bound to accept and apply the law as stated by the Second Circuit

until such time as that court sees fit to reconsider it.  I note, parenthetically,

that the fact that the standard of review also requires a reviewing court to

consider the whole record does not conflict with *Brault's* teaching that the

ALJ's findings must be upheld unless a reasonable factfinder could

conclude otherwise.

### 2.    ALJ's Weighing of the Opinion Evidence

Plaintiff broadly argues that the ALJ erred in failing to properly weigh

the opinion evidence in the record. Specifically, plaintiff argues that the ALJ

erred by (1) rejecting the opinion of PA Steele-Goodwin, (2) failing to weigh

opinions from Ms. Weir and PA Kenaly, (3) failing to credit the opinion of

consultative examiner Dr. Wassef, (4) failing to credit the opinion of

consultative examiner Dr. Hartman, and (5) failing to recontact any of these medical sources regarding any ambiguities in their findings, opinions, or conclusions.  Dkt. No. 15, at 21-23.

I note, as an initial matter, that plaintiff's application was filed in January 2018.  Accordingly, the new regulations regarding the consideration of medical opinions, which govern in cases involving applications filed on or after March 22, 2017, applies in this case.  Under those new regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Indeed, among the significant changes made under the new regulations is an abrogation of the treating source rule argued in plaintiff's brief.  *Andrew G. v. Comm'r of Soc. Sec.*, 19-CV-0942, 2020 WL 5858776 (N.D.N.Y. Oct. 1, 2020) (Lovric, M.J.); *Jacqueline L. v. Comm'r of Soc. Sec.*, 19-CV-6786, 2021 WL 243099 (W.D.N.Y. Jan. 26, 2021); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  Under the new regulations, the ALJ must now consider those medical opinions using the relevant factors outlined in the regulations, particularly focusing

on the supportability and consistency of those opinions.  *Id.*  The ALJ must

articulate how persuasive he or she found each medical opinion, and must

explain how he or she considered the supportability and consistency of

those medical opinions; the ALJ may also – but is not required to – explain

how he or she considered the other relevant factors as appropriate in each

case.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The relevant factors cited

in the regulations are (1) supportability, (2) consistency, (3) the source's

relationship with the claimant, including the length of the treatment

relationship, the frequency of examinations, the purpose of the treating

relationship, the extent of the treating relationship, and whether it was

merely an examining relationship, (4) the specialization, if any, of the

source, and (5) other factors that tend to support or contradict the medical

opinion.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Under the new

regulations, acceptable medical sources now include physicians,

psychologists, optometrists, podiatrists, advanced practice registered

nurses, and physician assistants.  20 C.F.R. §§ 404.1502(a), 416.902(a).

### a.    PA Steele-Goodwin

PA Steele-Goodwin provided assessments in February 2016 and

September 2017, in which she opined that plaintiff's conditions rendered

her unable to work in that she cannot use her hands for repetitive motions,

15

cannot sit or stand for extended periods of time, and cannot lift more than ten pounds. AT 683, 685. In April 2018, PA Steele-Goodwin opined that plaintiff should be excused from jury duty because she cannot sit for more than twenty minutes at one time. AT 682. Additionally, in March 2019, PA Steele-Goodwin opined generally that plaintiff's conditions prevent her from working or paying child support. AT 689. The ALJ found that these assessments were not persuasive because they conflicted with plaintiff's own reported activities, including her continued ability to do needle crafts. AT 16-17.

Plaintiff offers no specific argument as to why the ALJ's stated reason for declining to rely on PA Steele-Goodwin's opinion was insufficient or represented a failure to apply the relevant law. Instead, plaintiff merely argues that the ALJ erred "by replacing the providers opinion with his own medical judgment."[4] Dkt. No. 15, at 22. The ALJ specifically pointed to the

---

[4]    It was not until plaintiff's court-permitted reply brief that plaintiff argued that the ALJ erred in assessing the findings and opinions of "the treating providers" because they were "consistent with and supported by the record as a whole." Dkt. No. 25, at 4. Arguments raised for the first time in a reply brief, however, are deemed waived under the prevailing law of this circuit. *See Browe v. CTC Corp.*, 15 F.4th 175, 191 (2d Cir. 2021) (noting that "it is hornbook law that 'arguments may not be made for the first time in a reply brief'"); *Dayes v. Watertown City Sch. Dist*, 20-CV-0964, 2021 WL 4407385, at *5 n.4 (N.D.N.Y. Sept. 27, 2021) (Sharpe, J.) (finding that an argument raised by the defendant for the first time should not be considered by the court). Even if I were to consider this argument, plaintiff has failed to indicate what evidence supports her argument in this respect, and, as will be discussed throughout this report and recommendation, a review of the record as a whole shows that the ALJ's findings related to the ability to perform light work are amply supported by substantial evidence.

fact that her opinions were inconsistent with plaintiff's reported activities, which she noted throughout the decision as plaintiff's continued engagement in needlecrafts, reports in the medical record that she was making homemade gifts, volunteering at Sunday school, working a craft bazaar, walking daily, playing basketball with her grandson on at least one occasion, and going to the YMCA.  AT 17.  The ALJ's decision also documents her explicit consideration of medical evidence showing that injections provided good, often long-lasting pain relief for her lower back and knees, that she was seen to have no abnormalities in gait, ambulation, or standing, and that she was observed to have intact hand and finger dexterity with good grip.  AT 15-16.  The ALJ's decision is therefore sufficient to permit a reviewer to glean the reasons for finding that the extent of the limitations opined by PA Steele-Goodwin are not consistent with the record as a whole.

        b.    <u>LMHC Amy Weir</u>

In a letter dated September 1, 2017, Ms. Weir noted that plaintiff had been a client of the Clinton County Mental Health and Addiction Services Clinic since August 2015, was currently being treated for major depressive disorder, was actively engaging in scheduled individual and group sessions, and was continuing to experience "periods of time with mood

instability that impact her functioning and interpersonal relationships."  AT

684.  Plaintiff is correct that the ALJ did not afford any weight to this

assessment.  However, I find that this failure is at most harmless error

because the indication that her mood instability would impact her

functioning is so vague as to essentially be useless in determining specific

functional limitations; specifically, it does not indicate to what extent

plaintiff's functioning is impacted by that instability, or what specific work-

related functions would be limited.  *See Roe v. Colvin*, 13-CV-1065, 2015

WL 729684, at *4 (N.D.N.Y. Feb. 19, 2015) (Sharpe, J.) (recognizing that "a

physician's opinion which is so vague as to prevent the ALJ to bridge the

gap between a claimant's impairments and the functional limitations that

flow from those impairments is useless," absent an indication that it is

supported by and consistent with the other evidence or that a gap exists in

the record).[5]

c.   PA Kanaly

As to plaintiff's arguments regarding a functional assessment by PA

Kenaly, it is not clear what statement by PA Kenaly that plaintiff contends

---

[5]      As will be discussed below, the discernment of vagueness did not give rise to
any duty on the part of the ALJ to recontact Ms. Weir because – setting aside that she is
not an acceptable medical source even under the new regulations – there was sufficient
evidence regarding plaintiff's mental health and functioning from which the ALJ was
able to make a reasoned determination.

represents such a functional assessment.  PA Kenaly did observe in her

treatment notes related to sessions with plaintiff that she recommended a

clinic or outpatient treatment setting because plaintiff "is impaired to the

degree that there is relatively mild interference with

interpersonal/occupational functioning."[6]  AT 826, 830, 834, 838, 846, 850,

854, 858, 862, 866, 870, 874, 878, 882, 968.  Because such assessment,

to the extent it might constitute an opinion that the ALJ was required to

weigh, is not inconsistent with the ALJ's finding that plaintiff's mental

impairment did not impose more than mild limitations on her work-related

functioning, any failure to discuss or weigh such assessments is at most

harmless error.  *See Hazelton v. Comm'r of Soc. Sec.*, 16-CV-0427, 2017

WL 1437194, at *6 (N.D.N.Y. Apr. 21, 2017) (Suddaby, C.J.) (finding that

failure to indicate the amount of weight afforded to a consultative

---

[6]      The record does include an assessment from February 15, 2019, in which it is
noted that "[a] Partial Hospitalization Program is recommended because symptoms and
behavior are causing interference with social, family, and vocational functioning. It is felt
that functioning would worsen with PHP level of supervisions, but 24 hour intensive care
is not needed."  AT 842.  However, this appears to be either a mistake or a temporary
exacerbation that is not indicative of her typical level of functional ability.  Although the
assessment from that date notes that plaintiff had increased symptoms related to
anxiety and posttraumatic stress, she reported that she was otherwise "doing ok," and
she was observed to be tense, guarded, downcast, and depressed, but otherwise
friendly, attentive, communicative, and appropriate with intact memory, insight, and
judgment. AT 841. The next note from PA Kenaly, dated March 6, 2019, indicates only
mild functional impact, and there is no evidence in the record to suggest that plaintiff
actually required or attended any kind of partial hospitalization program between
February and March of 2019.  AT 846.

examiner's opinion was harmless error because that opinion was consistent with the ALJ's findings).

### d.   Dr. Wassef

After conducting a consultative examination of plaintiff on April 19, 2018, Dr. Wassef opined that plaintiff should be accommodated in a quiet environment, should not drive cars or trucks or operate heavy machinery, should not work at high altitudes, and should not drive or swim.  AT 650. He further opined that she had moderate limitations in her abilities to stand, walk, climb and descend stairs, bend, squat, lift, push, pull, and handle.  *Id.* The ALJ found that Dr. Wassef's opinion was somewhat vague, that his opinion for moderate limitations in standing and walking were not consistent with the medical evidence in the record and with some of the activities that plaintiff reported that indicated she had greater functionality. AT 16.

As was the case with PA Steele-Goodwin's opinion, plaintiff offers no specific argument for why the ALJ's findings regarding Dr. Wassef's opinion was erroneous, arguing only that the ALJ based his finding "on his own medical assessment of her impairments and limitations."  Dkt. No. 15, at 22-23.  The ALJ explicitly stated that he was basing his rejection of the moderate walking and standing limitations set forth in Dr. Wassef's medical

source statement on the clinical findings in the medical evidence and

plaintiff's documented activities throughout the record.  AT 16.  As will be

discussed in further detail below related to the physical component of the

ALJ's RFC determination, these rationales are supported by the record as

a whole and the ALJ therefore did not commit any error in declining to

accept all of the limitations opined by Dr. Wassef.  *See April B. v. Saul*, 18-

CV-0682, 2019 WL 4736243, at *5 (N.D.N.Y. Sept. 27, 2019) (Stewart,

M.J.) ("There is no requirement that the ALJ accept every limitation in the

opinion of a consultative examiner.") (collecting cases).

Additionally, to the extent that plaintiff appears to argue that Dr.

Wassef's opinion is clearly supportive of a limitation to sedentary work, that

argument fails, inasmuch as a moderate limitation in the abilities to stand

and walk is not so obviously inconsistent with the ability to perform light

work as to require such an interpretation.  *See Colvin v. Comm'r of Soc.*

*Sec.*, 15-CV-1033, 2017 WL 9487187, at *8 (N.D.N.Y. Feb. 27, 2017)

(Carter, M.J.) (Report and Recommendation) (finding RFC for light work

supported by substantial evidence in part based on consultative examiner's

opinion that included moderate limitations in the abilities to stand and walk);

*see also George A. v. Comm'r of Soc. Sec.*, 20-CV-0691, 2021 WL

2102527, at *8 (W.D.N.Y. May 25, 2021) (finding that the plaintiff had failed

to establish that moderate limitations in prolonged sitting, prolonged

standing, and walking precluded the performance of light work) (collecting

cases).  Therefore, even though the ALJ interpreted Dr. Wassef's opinion

as indicating an ability to perform sedentary work, his opinion is not wholly

inconsistent with the ALJ's RFC determination.

> e.  Dr. Hartman

After conducting a consultative examination of plaintiff on April 19,

2018, Dr. Hartman opined that plaintiff had a fair ability to understand,

remember and apply complex directions, use reason and judgment, interact

adequately with others, sustain an ordinary routine, and sustain

concentration, as well as mild difficulty regulating her emotions and

controlling her behavior.  AT 655.  Dr. Hartman concluded that the results

of the examination appeared "consistent with psychiatric problems which

may interfere with functioning."  *Id.*  The ALJ indicated that he found this

opinion persuasive for indicating that plaintiff had only mild limitations that

did not rise to the level of a severe impairment.  AT 13.

Plaintiff argues that Dr. Hartman's opinion that she had a "fair ability"

in many of these areas should be interpreted as meaning that her abilities

to function in those areas was "seriously limited," and therefore the ALJ

failed to reconcile relying on this opinion with finding no severe mental

impairment.  Dkt. No. 15, at 29-30.  This argument is unavailing.  The case that plaintiff relies on to support this interpretation specifically notes that the proffered interpretation of "fair ability" was defined on the specific form utilized by the physician in that case.  *Mills v. Colvin*, 14-CV-6003, 2015 WL 2451748, at *3 (W.D.N.Y. May 21, 2015) (noting that the form completed by Dr. Spurling specifically defined the term "fair ability" as used in that form as "the ability to function in this area is seriously limited and will result in periods of unsatisfactory performance at unpredictable times").  By contrast, there is no such definition noted in Dr. Hartman's opinion.  As such, the ALJ was not required to conform to plaintiff's suggested interpretation of the term "fair ability" when assessing Dr. Hartman's opinion.

I note, moreover, that based on Dr. Hartman's examination, the ALJ's interpretation of the term "fair ability" in Dr. Hartman's opinion is reasonable.  During the examination, Dr. Hartman observed that plaintiff was cooperative and pleasant with normal motor behavior and eye contact. AT 654.  Her affect was anxious and her mood was nervous, but she was alert and oriented and her attention, concentration, and recent and remote memory all appeared to be generally intact.  *Id.*  Her intellectual functioning was estimated to be near the average range and she had fair insight and

fair-to-good judgment. *Id.* He noted that plaintiff reported she is able to dress, bath, groom herself, cook, clean, do laundry, drive, and take the bus; she reported having several friends, and getting along fairly well with family members. AT 655. She also reported that she spends her days watching television, catching up on email, walking, going to church, and doing needlepoint, although needlepoint has become increasingly difficult. *Id.* Nothing in Dr. Hartman's examination observations suggest an interpretation of the opined "fair ability" as being inconsistent with essentially mild functional limitations; indeed, there were no apparent limitations in her functioning as a result of her mental impairments either observed or reported at the examination. Because the ALJ's interpretation of this opinion is reasonable, I decline to second-guess his resolution of this issue. *See Angelique S. o/b/o A.M.A.C. v. Saul*, 20-CV-0331, 2021 WL 2592903, at *5 (N.D.N.Y. June 24, 2021) (Suddaby, C.J.) (upholding the ALJ's interpretation of an opinion where it was reasonable); *Bush v. Comm'r of Soc. Sec.*, 16-CV-1007, 2017 WL 4621096, at *8 (N.D.N.Y. Oct. 13, 2017) (Suddaby, C.J.) ("[W]here the evidence is subject to more than one reasonable interpretation, this Court is bound to uphold the ALJ's interpretation.").

f.    Duty to Recontact Medical Sources

Lastly, plaintiff argues, in a single, conclusory sentence, that the ALJ should have recontacted any of the above sources for clarification to the extent that their findings were ambiguous.  Dkt. No. 15, at 23.  Plaintiff notably does not cite any authority for such a duty to recontact in cases such as this, and does not explain either what specific ambiguities are present in which specific opinions, or how any such ambiguities cause the evidence in the record to be insufficient for the ALJ to determine whether she is disabled.  Under the applicable regulations, 20 C.F.R. §§ 404.1520b and 416.920b, the agency may recontact a medical source "[i]f the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled."  20 C.F.R. §§ 404.1520b(b)(2), 416.920b(b)(2).  Even if some of the assessments of record contain ambiguities, those ambiguities do not cause the record to be insufficient or preclude the ALJ from reaching a conclusion on the issue of disability.  As was discussed above, there was sufficient examination and treatment evidence in the record from which the ALJ was able to interpret evidence that was vague or ambiguous and resolve inconsistencies.

Based on the foregoing, I recommend that plaintiff's arguments regarding the ALJ's weighing of the opinion evidence be rejected.

3.    The ALJ's Assessment of Plaintiff's Physical Functioning

Plaintiff next argues that the ALJ erred in finding that she was

capable of performing light work.  Dkt. No. 15, at 22-23, 26-29, 30-32.  In

particular, plaintiff argues that no medical source has opined that she can

perform light work on a full-time, sustained basis.  Dkt. No. 15, at 22-23.

As an initial matter, contrary to plaintiff's argument, the opinion of the

non-examining state agency medical consultant. J. Sharif-Najafi, M.D., who

initially reviewed plaintiff's application, found that she is capable of

performing the physical demands of light work.  AT 142-44.  Dr. Sharif-

Najafi additionally opined that plaintiff has no limitations in handling or

fingering and that she is able to frequently climb, stoop, kneel, crouch, and

crawl.  *Id.*  The ALJ explicitly found that this opinion was persuasive

because, even though it was rendered without the benefit of records of

plaintiff's later treatment, it was consistent with the record as a whole.  AT

16.

Additionally, as was discussed previously, although the ALJ

interpreted Dr. Wassef's limitations in standing and walking as being more

indicative of sedentary ability – and therefore rejected that portion of his

opinion – such moderate limitations are generally consistent with an ability

to perform light work.  There is therefore medical opinion evidence that

26

supports the finding of plaintiff's ability to perform light work.

Additionally, the evidence in the record as a whole supports that finding. As to plaintiff's back impairment, although medical imaging showed severe degenerative disc disease and severe spondylosis at the L4-L5 and L5-S1 levels, the record overwhelmingly documents that plaintiff's ambulation and/or gait were found to be normal at various times. AT 488,600-01, 603, 605, 692-93, 699, 702, 725, 734, 781, 792-93, 803. She was observed to occasionally have tenderness and limited range of motion related to her spine, with a few sporadic observations of positive straight leg raising or lower extremity weakness. AT 600-01, 702-03, 707-08, 714, 716, 729, 781, 792-93, 803. Similarly, although the record documents that plaintiff experienced tenderness, some swelling, limited range of motion, and pain in her knees, she was able to ambulate well generally. A notable exception is that plaintiff was observed to have limited ambulation due to right knee pain on September 4, 2018. AT 720-21. However, by October 2018, she was noted to be doing more activities around the house and walking longer distances after treatment with injections in her back and knee. AT 718, 755, 790-92.

I note, additionally, that the record documents that plaintiff's physical conditions benefitted greatly from treatment. She consistently reported that

27

spinal injections provided long-lasting relief that allowed her to do more activities around the house and walk for longer distances.  AT 600-01, 781, 792.  On June 12, 2019, PA Kathleen Maloney noted that plaintiff had historically had good relief with epidural steroid injections for her back, and stated that she might benefit also from medial branch blocks and radiofrequency ablution; she indicated that, at that point, the office would see plaintiff on an as-needed basis.  AT 815.  Plaintiff also eventually reported significant relief from injections in her right knee, to the point that her physician, A. Michael Imobersteg, M.D., indicated that his office would need to see her to treat her knee condition only on an as-needed basis because injections could be repeated every six months to manage her pain.  AT 750, 751, 753.  She additionally reported that osteopathic manipulation consistently provided good temporary relief for the symptoms of her back impairment.  AT 695, 697, 700, 710.  Thus, the record supports the ALJ's finding that plaintiff's impairments were fairly well controlled with treatment, and that she did not experience ongoing limitations that prevented her from performing a range of light work.  AT 15-16.

As to plaintiff's arguments that the ALJ failed to consider and account for the functional effects of her pain and obesity, plaintiff has pointed to no evidence to satisfy her burden of demonstrating that either of those impose

greater limitations on her functioning than were accounted for by the RFC. As was already discussed, the ALJ found that plaintiff's pain was mitigated to a large extent by treatment, and that finding is supported by substantial evidence.

Regarding plaintiff's obesity, although the ALJ does not assess this impairment as directed by Social Security Ruling ("SSR") 19-2p, I recommend a finding that such omission is harmless error under the circumstances for multiple reasons. First, there is simply no evidence that plaintiff's obesity imposes any additional or greater functional limitations than those already accounted for in the RFC. As the ALJ states, the record shows that plaintiff reported engaging in a significant range of physical activities, which increased progressively as her treatment helped to lessen her pain. Plaintiff also does not indicate in what ways her obesity imposes greater restrictions. Second, the ALJ relied on medical evidence and opinions that referenced plaintiff's height and weight, and thus his consideration of this evidence necessarily included an assessment of the effects of plaintiff's obesity on her ability to function. Because there is no evidence to support even an inference that a more explicit assessment of obesity would have altered the ALJ's findings, his failure to include such findings constitutes harmless error. *See White v. Berryhill*, 753 F. App'x

80, 81 (2d Cir. 2019) (finding harmless error in the ALJ's failure to conduct

an explicit assessment of obesity because the ALJ relied on medical

reports that noted plaintiff's obesity, and because plaintiff did not specify

how obesity further limited his functioning beyond the restrictions included

in the RFC).

Lastly, as to plaintiff's argument that the ALJ erred in failing to include

limitations in her abilities to handle, finger, and lift, plaintiff has again failed

to point to evidence that would support such a limitation.  As an initial

matter, the ALJ did limit plaintiff's ability to lift, in that, by limiting her to light

work he was by definition limiting her to lifting and carrying a maximum of

twenty pounds, and ten pounds frequently.[7]  As to the ability to handle and

finger, I have already discussed why the ALJ appropriately did not rely on

PA Steele-Goodwin's opinion that plaintiff could not use her hands for

repetitive motions.  In addition to those reasons, as the Commissioner

pointed out at oral argument, PA Steele-Goodwin's opinions related to

limitations in plaintiff's use of her hands predated her surgery for

tenosynovitis.  AT 683, 685.  The ALJ explicitly relied on Dr. Sharif-Najafi's

opinion, which found no limitation in plaintiff's ability to handle and finger,

---

[7]      20 C.F.R. § 404.1567(b).

finding that this assessment was consistent with the evidence.[8]  AT 16.

Substantial evidence supports the ALJ's finding of no limitation in

performing these functions.  Plaintiff was observed in October 2017 to have

left wrist pain with decreased range of motion that was assessed to be

likely DeQuervain's tenosynovitis, and for which a steroid injection was

administered.  AT 499.  She underwent surgery for that condition in April

2018.  AT 671.  In July 2018, she reported pain in her left thumb after

playing basketball and was observed to have limited active range of motion

in her thumb with tenderness of the MCP joint.  AT 724-25. However, there

is no other evidence in the record of ongoing limitations or treatment

related to her left hand impairment.  Dr. Wassef observed that, although

she reported the wrist brace she was wearing was medically necessary,

plaintiff had full range of motion in her wrists bilaterally, intact strength in

her upper extremities, and intact hand and finger dexterity and grip

strength.  AT 649.  Additionally, although plaintiff alleges limited ability to

function with her left hand, she consistently reported throughout the record

being able to do crafts such as needlepoint – albeit to a more limited extent

---

[8]      I note that the ALJ failed to address Dr. Wassef's opinion that plaintiff has a
moderate limitation in her ability to handle.  However, any failure to explicitly reject this
limitation is harmless error because the ALJ's discussion of why he accepted Dr. Sharif-
Najafi's finding of no limitations and rejected PA Steele-Goodwin's finding of limitations
allows a reviewer to glean the ALJ's rationale for rejecting the moderate handling
limitation present in Dr. Wassef's opinion.

than she did previously.  AT 91, 648.  Notably, at the hearing she reported

doing plastic canvas embroidery once or twice a week for 30 or 45 minutes

at a time.  AT 91.  As the ALJ noted in his decision, plaintiff was observed

to have been cross-stitching throughout an entire therapy session in

December 2018.  AT 930.  Even if her ability to craft is now more limited,

her remaining ability, combined with the complete lack of treatment

following surgery and lack of evidence of functional limitations in the

medical treatment evidence, is not so suggestive of work-related limitations

that the ALJ's failure to include such limitations should be second-guessed

or overturned.

Given the evidence available, and as will be discussed below related

to plaintiff's arguments regarding the ALJ's consideration of her subjective

complaints, there is simply no evidence in the record to support plaintiff's

contention that the ALJ erred in failing to include functional limitations

related to her ability to handle and finger merely because he found her wrist

impairment severe at step two.  Of note, although plaintiff argues that the

failure to include any such limitations was error, she has failed to offer any

evidence to support that argument other than her own report that she

stopped working because of limitations in using her hands.  Dkt. No. 15, at

31-32.

I therefore recommend that plaintiff's arguments as to the ALJ's findings regarding physical functioning be rejected.

4.    ALJ's Assessment of Plaintiff's Mental Functioning

Plaintiff next argues that the ALJ erred at step two by failing to find that she has a severe mental impairment and failing to include any mental limitations in his RFC determination.  Dkt. No. 15, at 29-30.  However, the ALJ's findings on these issues are supported by substantial evidence.

In his decision, the ALJ found that plaintiff's mental impairments were not severe based on a consideration of the totality of the medical evidence and plaintiff's reported activities that included significant socialization, use of public transportation, crafting, handling money, baking cookies, doing jigsaw puzzles, doing household chores, shopping, and routinely attending and participating in church activities.  AT 13.  The ALJ also found the opinions of non-examining state agency consultant M. Momot-Baker, Psy.D., and consultative examiner Dr. Brett Hartman to be persuasive in that they were consistent with all the evidence that showed no more than mild limitations in plaintiff's mental functioning.  *Id.*

I agree with the ALJ that the mental health treatment evidence does not show any significant impairment in functioning.  As was already discussed, Dr. Hartman's observations and notations of plaintiff's reports

during the consultative examination reveal few abnormalities beyond an anxious presentation.  Therapy notes throughout the relevant period reflect that plaintiff has dealt with relationship and other situational stressors related to her family and financial situation, but do not reveal any functional limitations resulting from those stressors.

Although plaintiff did not argue anything related to the regulatorily prescribed psychiatric review technique, I note that the ALJ did not apply that technique as clearly here as is typically seen; however, his decision still provides the relevant findings.  Under the regulations, the ALJ is required to include specific findings concerning the degree of limitation in each of the four functional areas of (1) understanding, remembering, and applying information, (2) interacting with others, (3) concentrating, persisting, and maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  A finding that a claimant has no or "mild" limitations in all of these areas will generally result in a finding that the mental impairment is not severe.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  The ALJ's written decision "must incorporate the pertinent findings and conclusions based on the technique," and "must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c)."  20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

In his decision, the ALJ stated that the opinions of Dr. Momot-Baker and Dr. Hartman, as well as plaintiff's reported activities, indicate that her "understanding, remembering, or applying information, interacting with others, concentrate, persist, or maintain pace, and adapting or managing oneself are no more than mildly affected."  AT 13.  This finding represents an adequate application of psychiatric review technique and is consistent with the ALJ's finding that plaintiff does not have a severe mental impairment.

Based on the foregoing, I recommend that plaintiff's arguments regarding errors in the assessment of her mental impairments and mental functioning be rejected.

### 5.    ALJ's Assessment of Plaintiff's Subjective Reports

Finally, plaintiff argues that the ALJ erred in failing to accept her subjective reports of symptoms as being consistent with the evidence.  Dkt. No. 15, at 32-38.  Specifically, plaintiff argues that (1) her testimony regarding pain is supported by the medical evidence, including MRI evidence and the need for surgery on her left wrist, (2) the ALJ failed to credit her testimony about her ability to maintain a regular schedule, and (3) the ALJ selectively chose and mischaracterized her testimony in a way that is misrepresentative of the full scope of her actual functioning, in that

he failed to acknowledge that she reported she was limited in her ability to do needle crafts and was unable to bowl as a result of her impairments, failed to acknowledge medical records noting abnormal ambulation or gait, and failed to ask her about what she meant when she reported in one medical record that she had been "playing basketball."  *Id.*

An ALJ must take into account subjective complaints of pain and other symptoms in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Marcus*).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[9]  20 C.F.R. §§ 404.1529(a),

---

[9]    In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 432(d)(5)(A).

416.929(a); SSR 16-3p.  If the claimant's testimony concerning the

intensity, persistence or limiting effects associated with his or her pain is

not fully supported by clinical evidence, however, then the ALJ must

consider additional factors in order to assess that testimony, including (1)

daily activities, (2) location, duration, frequency and intensity of symptoms,

(3) precipitating and aggravating factors, (4) type, dosage, effectiveness

and side effects of any medications taken, (5) other treatment received,

and (6) other measures taken to relieve symptoms.  20 C.F.R. §§

404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi); SSR 16-3p.

 If the ALJ finds that a claimant's subjective testimony should be

rejected, he or she must explicitly state the basis for doing so with sufficient

particularity to enable a reviewing court to determine whether those

reasons for disbelief were legitimate and whether the determination is

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing

*Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ's

decision need not contain a discussion of all of the potentially relevant

factors listed above, so long as it is clear from the decision that the ALJ

considered all of the evidence and that he or she provided specific reasons

for his or her determination as to the intensity, persistence, and limiting

effect of the claimant's symptoms.  *See Cichocki v. Astrue*, 534 F. App'x

37

71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision").  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

    In this case, the ALJ found that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence, including medical evidence showing lesser limitations, evidence that showed treatment such as injections provided significant pain relief, the frequency of treatment – particularly as to the fact that she was told she would be seen only on an as-needed basis for her knee because injections had been so effective – and indications of plaintiff's daily activities and other reports that were inconsistent with claims of greater limitation.  AT 14-17.

    Plaintiff's arguments that this assessment was insufficient are unavailing.  As to plaintiff's argument that her reports of pain were supported by the objective imaging evidence and her need for left hand surgery, the argument ignores the host of evidence that shows that

treatment was highly effective in managing plaintiff's pain.  Specifically, as was discussed previously, treatments such as injections, physical therapy, and osteopathic manipulation were so effective at treating her pain for her back and knee impairments that her physicians determined that her continuing treatment for those conditions should be on an as-needed basis by June 2019.  The ALJ therefore did not fail to account for plaintiff's pain, but rather found that the medical evidence showed that her pain was mitigated significantly by the treatment that she received.

The ALJ also did not err in declining to credit plaintiff's testimony that she often spent multiple days a week in bed due to her mental impairments – testimony which plaintiff, without pointing to evidence in support, argues suggests that she would be unable to maintain a schedule of attendance sufficient to perform work on a full-time basis – because there is no evidence other than plaintiff's testimony to support that she is so limited. Rather, other evidence that plaintiff performs tasks such as shopping, teaching Sunday school, attending treatment appointments, visiting with her son when he comes home, and doing activities with her grandson when he stays with her during the summer months belie her reports that she routinely is unable to get out of bed as a result of depression.

Lastly, the ALJ did not err in his consideration of plaintiff's reports of

activities.  To the extent that the ALJ cited plaintiff's report that she could bowl, that was a misrepresentation of plaintiff's testimony; however, that activity was only one among a wealth of activities that the ALJ relied on, all the rest of which indicate a greater ability to perform tasks than plaintiff otherwise asserts.  Specifically, the ALJ cited various reports that she goes to the YMCA, bakes cookies and does puzzles with her grandson, uses public transportation, does household chores, shops, does needle crafts, attends and participates in church activities, makes homemade gifts, and walks daily.  AT 13.  The ALJ specifically noted that reports plaintiff is unable to do many things around the house are inconsistent with her report in a treatment note that she has to take care of everything because her husband is very dependent on her.  AT 15.  The ALJ also noted that, despite her reports of significant physical limitations, plaintiff reported injuring her hand while playing basketball on one occasion.  AT 16. Although plaintiff attempts the argue that the ALJ erred in failing to ask her to clarify what she meant by "playing basketball," it is inescapable that playing basketball would necessarily require use of the hands even if plaintiff was only shooting the ball into the basket while stationary rather than running around, and such activity is inconsistent with her reported significant limitations and pain related to her left wrist.

40

In short, the ALJ's consideration of plaintiff's reported activities throughout the record is proper and provides one of many reasons for the ALJ's choice not to rely on plaintiff's subjective reports of disabling limitations, particularly in light of evidence that contradicts plaintiff's reports of greater limitation.

Based on the foregoing, I recommend that plaintiff's argument regarding the ALJ's consideration of her subjective allegations be rejected.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 22) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT

TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE

APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated:    November 29, 2021
          Syracuse, NY                        _____

                                              DAVID E. PEEBLES
                                              U.S. Magistrate Judge